I'd like to take my few minutes here to direct the court to two issues that I see. First off, in the magistrate's reports and recommendations, he cited a myriad of cases from the Ninth Circuit violations of a similar statute. In this case, it's NRS 484.305, which basically says that you're to maintain your travel lane as much as possible, and every state has pretty much an identical statute. In the case of Barr, the evidence was that Mr. Delgado had crossed the yellow lane one time from 8 to 18 inches for about a second, came back into his lane, and the officers then pulled him over, searched his car, found a quantity of cocaine. The issue is the reasonableness of the stop. In his report and recommendations, the magistrate judge cited a number of Ninth Circuit cases showing how much more egregious variations of the deviations from the travel lane were held to not be violations of similar statutes. And one of the issues that he brought up was the fact that in other Ninth Circuit cases and in the case of Barr, no danger was presented to the public. In other words, no oncoming traffic had to veer off or there was no threat made. Now, in the case of Barr, in the government's objections later in the district court, the assistant United States attorney argued incorrectly, I believe, that what the magistrate had done was add another condition to the statute, NRS 484.305, stating that in order for there to be a violation, the deviation from the travel lane had to cause some amount of public danger. And that's just not so. That was never mentioned in the reports or recommendations, and it's not in the statute. Okay? It was just he merely focused that issue as another factor to show how minor of a deviation from the travel lane had occurred in this case. I wanted to ask you, I want to make sure I understand. Was this a four-lane highway? Yes. Two lanes in each direction? Correct. And your Mr. Delgado was traveling in what direction? Correct. What direction? He was traveling north. So he's traveling north, and he's in what would be the westbound lane, the left-hand lane, is that right? That's correct. And then he went over into what would normally be called maybe, it wouldn't be the shoulder, but a safe area on the left-hand lane, is that it? Correct. There's a median, a gravel median. A gravel median between the four lanes. Correct. And he was there as a gravel median for just a second or so, 12 to 14 inches, and went back. Correct. The testimony from the officers was a second, maybe two seconds, and the distance he traveled was anywhere from eight inches to two feet. And how fast was he traveling? And I believe he was going within the speed limit. Within the speed limit. Yes. But is there any reason why he was traveling on the left-hand lane? Usually, if there's no traffic, you're on the right-hand lane, although either lane is open to traffic. Is there anything in the record on that? No, there isn't. And the police arrested him, made no point of that at all. All they said was, you went over the lane. Correct. And now, what kind of a car was he driving? That I do not recall. I believe it was a sedan. The police had pulled him over. They called a... Buick Mustang. And they immediately called in a... It's an interdiction team. They immediately called in for a dog search. The dog sniffed the car, found nothing. They went ahead and received consent from Mr. Delgado to search. I understand that. So, is it your position that the only reason they stopped this fellow, that the traffic stop was pretextual, and he was a Mexican... Is he a Mexican-American? Yes, he was. And that's the reason you feel that he was stopped? Well, I believe that he was... I believe that the police did not have a reasonable suspicion to believe that a traffic violation had occurred. There was nothing else in the record to justify the stop but the alleged traffic violation? Correct. And your position is that it is not a traffic violation to drive on the median for a very short time if there's no other traffic around? That's correct. And NRS 484.305 says that you are to maintain your travel lane as much as possible. That's not an absolute statute saying you must at all times maintain your travel lane. Before, when the dog... Before the consent to search, did the policeman say anything about you violated the traffic laws or why they stopped him? He had told... The police officer did tell them why he had pulled him over. He had asked for his driver's license, registration, everything was in order. He did not give Mr. Delgado a ticket. He said he was free to go. As Mr. Delgado was leaving, he said, look, can I ask you a few more questions? Did he give him a warning ticket? No. Nothing? Nothing. Okay. Well, I guess all roads lead back to traffic court. This is a purely state law question, you would agree? Yes, as far as whether or not there was a violation of, in this case, NRS 44.305. Now, the U.S. attorney does cite a case, State v. Alejandre, which was decided pre-Wren. And at the time, Nevada had the reasonable officer test. Would a reasonable officer have pulled over a person for violating, under such conditions, for violating a traffic stop? In the Alejandre case, there's some dicta that said, well, crossing over the fog lane might be enough to violate NRS 44.305, but no reasonable officer would do such a thing. In the Alejandre case, the police had followed the driver for a period of four miles and witnessed at least two times where he had crossed over the fog lane. That case eventually was overruled by State v. Gama, which came out after the Wren decision and adopted the Wren criteria. Well, it's an odd, one would hate to trouble Nevada Supreme Court with this, but really, the Nevada Supreme Court is the only authority, definitive authority on construing the statute, right? Correct, but again, we're here in federal court. Not only could certify the question to the Nevada Supreme Court if we wanted an accurate answer to whether or not a single traverse over the fog line constitutes a violation of the statute. That would be an option. Like I said, the only case that addressed it in dicta and it was eventually overruled. All right. I think we understand your argument. Do you have any further questions? You want to save your time for rebuttal? Sure. Good morning, Your Honor. May it please the Court. Robert Ellman for the United States. The Alejandre case, which opposing counsel just referred to, states that it is, well, this is what it states, quote, crossing over the fog line is apparently a violation of NRS 484.3051, end quote. That is hardly a holding, though. No, it is dicta, I realize, but that's the only pronouncement by the Nevada courts that you have. I think it's entitled to some credence, but clearly there was no analysis of the language of the statute. But this Court also decided another case cited at page 10 of the answering brief called Garcia, 205 F. 3rd, 1182. And at page 1187, they concluded that there was a violation of this Nevada statute where the vehicle weaved within its own lane, and then later on... You have to look up and speak up. Okay. In the Garcia case, Your Honor? No, what you're talking about now, when you were looking down, I didn't get what you said. Okay. What I said was that the Ninth Circuit has another case called Garcia. Yeah, that's what I wanted to know. Okay. We cited that at page 10 of the answering brief. And in Garcia... Well, Garcia did go over the fog line, too. Well, the fog line is the right-hand side. I'm sorry, the shoulder. It went onto the shoulder. Well, what it says is this. Garcia does not dispute that the vehicle was weaving within its lane or that it later crossed onto the shoulder of the highway. Right. So apparently we have the same violation that we have here, except that the You don't have the weaving, though. Well, the weaving is within the lane. You think about weaving, you think about several movements. Here, there was just one. This is about as far-fetched a case of a travel violation I've seen. It may be okay, but it's sure going a long way to say that any movement almost at all by a traveler, if it can be a technical violation, is okay to stop a car. A lot of us would be in danger of being stopped for ordinary driving. I'm sure you've crossed the lane on occasion. I have. Of course, I'm older than you, too. Well, Your Honor, what the statute says is that the car must be maintained... It's a Minister of Miranda warnings here, if you're asking, if he's committed to violating the law. It must be driven as nearly as practicable entirely within a single lane. Now, this is an instance where the patrol car is following the defendant's car, and it stays within the lane, and you also have testimony by both of the officers who observed this that there was no condition in the road which would have caused this car to cross over the line. And the cases upon which the defendant relies here involve circumstances such as that, particularly the Gregory case from Utah. There was one crossing of the line there, but the court noted that that was a winding, mountainous road in windy conditions. Well, what do you make of Collin? That's our case in which we construed the California statute. It's pretty similar to the Nevada statute, and essentially said, well, that's not enough. It is a very similar statute, Your Honor, but the distinction is that the tire merely touched the line there. It didn't cross over the line, and that's the distinction we're relying upon. And under Wren, even the most minor traffic violation constitutes probable cause to stop a car, and I'd note that Wren involved a civil traffic infraction such as this, but in Atwater v. Lago Vista, 532 U.S. 318 at 354, the court made clear that the probable cause to believe that even, quote, a very minor criminal offense, end quote, gives rise to probable cause. So regardless how minor the traffic violation is, if it's a traffic violation, then police are justified in making the stop. I think that's the law. I have no question about it. The real question here is, was there any violation of the Arizona statute? Well, we believe that there was by virtue of that tire crossing that line under circumstances where there was no external factor that would have caused that, because again, the language in the statute that controls says that it has to be driven as nearly as practicable entirely within a single lane. And as the patrol car demonstrated, it was quite possible to do that at the point where the defendant failed to do that, and accordingly, that is a violation. I'd also like to make the point that if the court draws the line somewhere other than where the district court drew it here, it's always going to invite a great deal of rather subjective analysis about, you know, how many times the line was crossed over, for how long, et cetera. I mean, this is literally a bright line rule that we're advocating. You know, Mr. Elman, the line could be drawn, and I'm not suggesting that that's where we would draw it. Here, no warning signal, no warning ticket, and no citation. So you could talk about if we had given them a citation or a warning line, then we would be getting to splitting hairs on how much or what. But here we've got a bright line rule. We've got a situation where no citation was given, and no warning was given. I don't believe the failure to give a citation controls, Your Honor, because I believe it's within the discretion. I'm not suggesting it controls, but you were talking about a bright line rule. That could be a bright line rule, couldn't it? The failure to give a citation? Well, it could, but that takes you away from the language of the statute and into other factors that don't necessarily control if a police officer makes a bad or wrong decision. I don't want to have the court relying on that to determine whether there was or was not a violation. I'd rather have it be the facts of what actually happened, because that's the objective criteria that the court looks for in Wren. In the Collin case, it is true they said, well, he touched the line twice for about 10 seconds, but then the court also goes on to say, well, it's only natural that somebody is going to go outside the lanes now and again safely. So although you call it a bright line test, all these cases are all over the map on their facts. In Garcia, you have a truck involved, your case, but he's mostly what gave rise to concern, I think, is the weaving in the line, and then he goes on the shoulder, and he tries to pass a truck. Now, that's a whole different situation than this one. But the other aspect of this is it's really not our decision. It's the state court, the state of Nevada decision on this statute. How do you feel about certification? Well, certification is a plausible option, Your Honor, but given the Garcia case, and given the statement in Alejandre, and given what I think is plain language in the Nevada statute, I think this court does have the authority to construe the statute and apply it in this case. There's nothing especially unusual about these facts, and I don't see an ambiguity in the language of the statute. I think the court's free to construe it as it will. Well, the ambiguity is that it doesn't say, it doesn't make it a strict liability offense as you have described it. It says as much as practicable, which means to me that it's allowing for some circumstances when you go outside in the lane. Now, I suspect you would say, well, you have to have something else involved, some reason to go outside the lane, but that's not what the statute says. We have to construe what practicable means. Well, I believe it's simply construed by what circumstances apply in the particular case, and that's very well vetted in this hearing, Your Honor, because, again, both officers testified that there was nothing that would have caused the defendant's vehicle to cross that line where it crossed it. And, of course, the patrol car followed it and remained within those lines. So as nearly as practicable under these circumstances would have required it to stay entirely within the lane. What is the sentence here? How long? The sentence is 46 months for conviction of possession of cocaine with intent to distribute. In the experience I've had, I'm not in California, certifying sometimes it takes the State Court a very long time to come to a decision. I have not had that experience. You don't want us to certify, do you? I would rather you did not, Your Honor. I would rather you simply construed the statute. I didn't sense any enthusiasm. There was none, I admit, Your Honor. Either side, sir. Is this person, I should answer another thing, is he an American? Is he a citizen or don't you know? I don't know, Your Honor. I assumed that he was. I also have to, well, in my remaining time I have to bring to the Court's attention the fact that one of the cases we relied upon was vacated in a Booker decision, and that's the Herrera-Martinez case. It's cited in the answering brief at page 12, and I only realized yesterday that that had been vacated. It was vacated on Booker grounds, but nonetheless it's vacated, so it was improper for us to have relied upon it. That's on page what? Page 12, Your Honor. Thank you very much. Unless the Court has any questions. Thank you. Thank you. Rebuttal? Okay. Very good. The case is heard and will be submitted, and we'll proceed to argument in the case of United States v. Marquetta Tapia.
judges: Farris, Thomas, Bright